UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
DEC 19 2007
CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| JOHN UNRUH II; NATHANIEL UNRUH; and AMY MILLER, individually and as Personal Representatives of the Estate of JOHN HAROLD UNRUH, deceased; and MOLLIE EICHMAN, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVISON COUNTY, SOUTH DAKOTA; HUTCHINSON COUNTY, SOUTH DAKOTA; DAVID MILES, individually and in his capacity as the Davison County Sheriff; DON RADEL, individually and in his capacity as Administrator of the Davison County Jail; CONNIE IRELAND, individually and in her capacity as a Davison County employee; GLEN ELLERTON, individually and in his capacity as a Davison County employee; JEFF MINER, individually and in his capacity as a Davison County employee; JERRY MCNARY, individually and in his capacity as a Davison County employee; CINDY VOYLES, individually and in her capacity as a Davison County employee; ROGER ERICKSON, individually and in his capacity as a Davison County employee; GINGER FAAS, individually and in her capacity as a Davison County employee; LINDA ALDRICH, individually and in her capacity as a Davison County employee; TOM KULM, individually and in his capacity as a Davison County employee; CAROL RADEL, individually and in her capacity as a Davison County employee; DEB GERING, individually and in her | CIV. 06-4052<br><br><br><br>MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT (DEFENDANT DEB GERING) |

capacity as a Hutchinson County employee; and
OTHER UNKNOWN PERSONS, individually
and in their capacity as employees of
Hutchinson and Davison Counties, South
Dakota,

       Defendants.

Pending before the Court is a motion for summary judgment filed on behalf of defendant Deb Gering ("Gering").[1]

## BACKGROUND

Plaintiffs John Unruh II, Nathaniel Unruh, Amy Miller and Molly Eichman ("Plaintiffs") bring this action under 42 U.S.C. § 1983 and state law claiming the Defendants are liable for suffering endured by and the death of Plaintiffs' father, John Unruh ("Unruh"), while he was incarcerated in the Davison County Jail. A summary of the facts of the case is set forth in the Memorandum Opinion and Order issued on March 30, 2007. (Doc. 36.) The undisputed facts as they relate to Gering's motion for summary judgment are stated here.

On the evening of June 27, 2004, a Freeman police officer arrested Unruh for third offense driving under the influence. After Unruh's blood was drawn at the hospital, Hutchinson County Deputy Sheriff Jack Fitzler took custody of Unruh for purposes of transporting him to jail in Mitchell.[2] Unruh asked Deputy Fitzler to stop by Unruh's house because he might have left a pizza

---

[1] The motion for summary judgment initially was filed on behalf of "Hutchinson County Defendants" who were sued in the Complaint as "Other Unknown Persons, individually and in their capacities as employees of Hutchinson County." Subsequently, Plaintiffs amended their Complaint to add Gering as a defendant, individually and in her capacity as a Hutchinson County employee. The summary judgment pleadings filed after the Amended Complaint focus on whether Gering is entitled to summary judgment. Defendant Davison County and its employee defendants have no objection to Hutchinson County's Motion for Summary Judgment and no pleadings were filed by those defendants in regard to this motion. (Doc. 45.)

[2] Hutchinson County did not maintain its own jail or holding facility, but instead it contracted with other counties, including Davison County, to house detainees.

2

in the oven or left the oven on. Deputy Fitzler agreed. When Unruh and Deputy Fitzler went inside the house, Deputy Fitzler noticed the oven was not on but there was a burnt pizza on the counter. Unruh turned off the television and used the restroom. Deputy Fitzler told Unruh to bring any medication he might need. As he started looking through his bottles of medication, Unruh asked Fitzler what would happen to him. Deputy Fitzler told him that he would be booked at the Davison County Jail and that he might get out the next day if he could come up with a $1,000 bond. Unruh decided not to bring his medication. He told Deputy Fitzler he would leave the house unlocked so somebody could retrieve his medicine if that became necessary.

On the drive to Mitchell, Unruh sat in the front seat with no handcuffs and the two men conversed. Upon arrival at the Davison County Jail, Unruh was booked. Deputy Fitzler told jail staff that, if Unruh's medication was needed, the Hutchinson County Sheriff's Department could retrieve it. At the time of booking (12:31 a.m. on June 28, 2004), Unruh's blood alcohol level was .356, a fact determined at a later time. Before leaving, Deputy Fitzler considered bonding Unruh out himself, but decided that Unruh would be better off at the jail than at his home alone. As Deputy Fitzler left the Davison County Jail, Unruh shook his hand and thanked him for his help. After transporting Unruh to jail, Deputy Fitzler's shift ended. He was off work for the next couple of days and he had no further contact with Unruh.

Unruh was not released from Jail on June 28 or June 29. An Inmate Incident Report prepared on June 30, 2004 regarding events that occurred on June 29, 2004 indicates that jailor John Conway of the Davison County Jail called the Hutchinson County Sheriff's Department sometime on June 29 to follow up on Unruh's medication.[3] John Conway stated in his report:

---

[3] A copy of this report is attached as Exhibit 7 to the Woodward Affidavit. (Doc. 78.) The parties also have referred to Davison County Jail "shift notes" indicating a call was made to the Hutchinson County Sheriff requesting medication. The shift notes are referred to by the Davison County jail administrator, Donald Radel, at pages 107 to 111 of his deposition. Mr. Radel read a shift note into the record on page 107 of this deposition, but the record does not include a copy of this particular shift note. Copies of three pages from the Davison County jail shift log for June 29, 2004 are attached as Exhibit 2 to the Defendants' reply brief, but those do not contain the note referred to by Donald Radel.

3

> At approximately 1330 hours on 6/29/04 inmate Erique Rivera called into the control on the inmate intercom; I answered the call and inmate Rivera told me that his cellmate John Unruh had been vomiting all over the toilet stool and that he (Rivera) was requesting that Unruh be moved to another cell. I discussed the matter with shift supervisor Lt. Voyles who told me to move Unruh to cell 502. I went to cell 207 and told Mr. Unruh that he was going to be moved to another cell. At that time Unruh collected his bedding and accompanied me to the booking room where I placed him in cell 502 where he would be continually on camera and could be monitored more easily by staff. At that time Unruh told me that he had not been vomiting; that that had been "two days ago." Mr. Unruh took a book with him into cell 502 and spent most of the rest of the afternoon sitting up and reading. He also took short naps. He did not appear to be having problems. He was not vomiting during this time. After returning to the control room I then placed a phone call to the Hutchinson County Sheriff's office requesting if they could do a follow-up on Unruh's meds and asking if they could get his meds sent to the Davison County Jail. The individual I spoke with at the Hutchinson County Sheriff's Office told me that the Sheriff was out of the office for 2 or 3 hours and that they would have the Sheriff call us back when he returned. When shift 2 ended at 1600 the Hutchinson County Sheriff had not called back.

(Doc. 78-8). In June of 2004, the Hutchinson County Sheriff's Department consisted of three people: Sheriff Jim Zeeb, Chief Deputy Deb Gering and Deputy Fitzler. No one from the Hutchinson County Sheriff's Department, or from any department where the call may have been routed, recalls receiving the call from Davison County Jail staff. Apparently the call was not returned.

Gering was on duty on June 29, 2004; Deputy Fitzler was not. On July 1, 2004, an investigator with the Department of Criminal Investigation ("DCI") spoke with Gering about the call from the Davison County Jail staff. The DCI report states:

> I asked if she remembered a call from the Davison County Jail requesting medications for UNRUH. Dep. Gering said the Davison County Jail did call the HutchinsonCoSO asking if UNRUH was on medications or something of that nature. She did not know the contents of that call because she did not take that particular call. Dep. Gering said she would check and let me know who took the call and what it was about.

4

(Doc. 78-6.) Gering was asked about the call during her deposition on December 19, 2006. The question was: "And we know that - - we've already deposed Deputy Fitzler and Sheriff Zeeb, and neither one of those gentlemen received a call. Is it your testimony that you did not receive a call?" Gering responded: "I can't remember. I'm just going to put it that way, because I don't remember it."

Unruh's condition deteriorated while he was in jail and, shortly after 10:00 on the evening of June 29, 2004, Davison County Jail staff contacted Gering to advise her that Unruh needed to go to the hospital. Upon receiving this call, Gering called Linette Schnabel, the Hutchinson County Clerk of Courts. Gering asked Schnabel to call the Davison County Jail in her role as Magistrate and to authorize Davison County to transport Unruh to the hospital. Schnabel called the Davison County Jail and gave the authority to transport Unruh to the hospital. Shortly thereafter, Unruh became unresponsive and an ambulance was called. Unruh was transported to Avera Queen of Peace Hospital in Mitchell and later to the Heart Hospital in Sioux Falls where Unruh died from a myocardial infarction.

Gering has been in law enforcement for approximately 15 years, and has served as Chief Deputy Sheriff of Hutchinson County for approximately 7 years. After she became involved with law enforcement, the only direct contact Gering had with Unruh was on one occasion where she served Unruh with civil papers as Unruh was making a court appearance. She also went to Unruh's house with Sheriff Zeeb and Deputy Fitzler for a "wellness check" earlier in June of 2004, but she did not see Unruh. Gering was on her way home from work. She stayed outside Unruh's house and left after she learned that Unruh was all right. With regard to the condition of Unruh's health in June of 2004, Gering had general knowledge that Unruh had medical problems and that he was an alcoholic, but she did not know of any specific medical condition. She knew Unruh had previously been hospitalized for in-patient alcohol treatment. Gering has no medical training beyond basic training to become CPR certified.

5

Plaintiffs contend that Gering acted with deliberate indifference to Unruh's serious medical needs by failing to take action to get him his medications. Plaintiffs allege that failure to provide Unruh's medications contributed to his death.[4] According to Plaintiffs' expert, Dr. David Fine, Unruh's "lack of aspirin and Imdur resulted in a loss of their protective role for coronary artery disease, as well as the lack of Vasotec which may have contributed to some excessive hypertension." (Doc. 30, Exhibit D.)

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ( c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242 (1986).

Unruh was a pretrial detainee. Although a pretrial detainee's claims regarding inadequate medical care are analyzed under the Fourteenth Amendment's Due Process Clause, the Eighth Circuit explained that it "repeatedly [has] applied the same 'deliberate indifference' standard [to pretrial detainee's claims] as is applied to Eighth Amendment claims made by convicted inmates." *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006). The Eighth Amendment prohibits the infliction of cruel and unusual punishment. A prisoner's allegation of inadequate medical attention

---

[4]Liability is also claimed against other defendants based upon a time lapse before seeking medical assistance and before anyone administered CPR when Unruh collapsed and became unresponsive. Plaintiffs further allege Unruh's untreated delirium tremens and dehydration contributed to his deterioration and ultimate death.

6

was recognized as a potentially viable claim for a violation of the prohibition against cruel and unusual punishment, via a § 1983 cause of action, in *Estelle v. Gamble*, 429 U.S. 97 (1976). To state a cause of action, the prisoner must sufficiently allege "deliberate indifference" to a prisoner's "serious illness or injury." *Id.* at 105. To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) he suffered objectively serious medical needs and; (2) the prison officials actually knew of but deliberately disregarded those needs. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "To constitute an objectively serious medical need or a deprivation of that need, [the Eighth Circuit] has repeatedly emphasized that the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). "Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The first issue is whether Unruh suffered objectively serious medical needs. *See Coleman*, 114 F.3d at 784. Unruh missed several doses of multiple heart medications for his apparently serious heart condition. Unruh's underlying heart condition, which was evidenced by his prescribed drugs, is of an obvious nature. Accordingly, construed in the light most favorable to Plaintiffs, the Court finds it was both obvious to a layperson and supported by medical evidence that Plaintiff suffered objectively serious medical needs. *See Aswegan*, 49 F.3d at 464 (explaining objectively serious medical need).

The second issue involves the subjective component of the deliberate indifference test. Gering knew Unruh had previously been hospitalized for alcohol treatment and knew that he had some medical problems. Taking the facts in the light most favorable to Plaintiffs, the Court must assume Gering received the telephone call from the Davison County jail, informing her of Unruh's

need for medication to treat his medical problems. Plaintiffs argue this at least creates a genuine issue of material fact concerning Gering's knowledge of Unruh's serious medical needs and whether she was deliberately indifferent by: 1) not returning the call to Davison County; 2) not informing any of her co-workers about the call from Davison County; and 3) failing to deliver the medication to the Davison County Jail in Mitchell. The Court agrees. Taking the facts in the light most favorable to Plaintiffs, the Court finds that the facts respecting the subjective knowledge of Gering, and her response to what she knew, are material issues of disputed facts preventing the Court from granting summary judgment to Gering. Accordingly,

IT IS ORDERED that Defendant Hutchinson County's Motion for Summary Judgment, Doc. 40, is denied.

Dated this 19th day of December, 2007.

BY THE COURT:

*Lawrence Piersol* (signature)

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: *Sharon Suro* (signature), Deputy
(SEAL)

8